**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAIME MALDONADO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 22-36 |

**O P I N I O N**

SCOTT W. REID                                                  DATE:   December 16, 2022
UNITED STATES MAGISTRATE JUDGE

       Jaime Maldonado brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security finding him no longer disabled under the adult rules for Supplemental Security Income ("SSI"), following the termination of his child benefits when he turned age eighteen. He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be granted in part and the matter remanded for the ALJ to seek Maldonado's therapy notes from the relevant period, and to consider the third-party submissions.

I.     *Factual and Procedural Background*

       Maldonado was born on July 18, 2001. Record at 50. On October 16, 2009, his mother, Jessica Semidey, applied for child benefits on his behalf, alleging disability based on ADHD, Oppositional Defiant Disorder ("ODD"), and aggression. *Id*. Benefits were granted. Record at 51. As required by law, however, eligibility for benefits was redetermined under the adult rules when Maldonado turned eighteen. Record at 50. It was determined on September 18, 2019, that Maldonado was no longer disabled, and that his SSI benefits would terminate in October 2019. Record at 60.

Upon reconsideration, the discontinuation of benefits was affirmed on January 9, 2020. Record at 85. Maldonado then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 91. After several postponements at Maldonado's request, a hearing was held in this matter on March 3, 2021. Record at 30, 126, 147.

On March 18, 2021, the ALJ issued a written decision denying benefits. Record at 12. The Appeals Council denied Maldonado's request for review on November 8, 2021, permitting the ALJ's decision to serve as the final decision of the Commissioner. Record at 1. Maldonado then filed this action.

II.   *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). In redetermining the eligibility of a recipient of child benefits when he or she turns 18, the Agency applies the five-step sequential evaluation process normally used for an adult, as set forth in 20 C.F.R. §416.920(a). The one exception is that the first step, which considers whether the claimant is working, is not used. 20 CFR § 416.987(b).

However, the following four steps are employed (numbered below as they are for adult determinations):

> (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In his Decision, the ALJ found that, in the relevant time period beginning on October 1, 2019, Maldonado suffered from the severe impairments of ADHD, an adjustment disorder with mixed disturbance of emotions and conduct, and a bipolar disorder.  Record at 17.  He found that the asserted impairments of ODD and an anxiety disorder were not established by a diagnosis from an acceptable medical source during the relevant time period.  *Id*.

The ALJ found that none of Maldonado's impairments, either singly or in combination, met or medically equaled a listed impairment. Record at 18. He determined that Maldonado had moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself; and only a mild impairment in understanding, remembering or applying information. Record at 18-19.

The ALJ then found that, since October 1, 2019, Maldonado had the RFC to perform work at all exertional levels, but was limited to low stress jobs, meaning jobs with few workplace changes. Record at 20. He was also limited to simple, routine, and repetitive tasks; could not work at a production-rate pace; and could interact only occasionally with the public or supervisors. *Id*.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ wrote that Maldonado could work as a machine feeder, press feeder, or product sorter. Record at 24. He concluded, therefore, that Maldonado was not disabled. *Id*.

In his Request for Review, however, Maldonado argues that the ALJ erred in (a) failing to consider a third-party statement submitted by his mother; (b) failing to comply with his duty to develop the record by not obtaining therapy notes from the relevant period; (c) wrongly finding the opinion of the non-examining agency expert to be consistent with the totality of the evidence; and (d) failing to obtain most of Maldonado's mental health treatment notes dated prior to his eighteenth birthday.

IV.     *Discussion*

    A.     *The Third-Party Statements*

On August 16, 2019, Maldonado's mother, Jessica Semidey, submitted a Third-Party Function Report. Record at 377. In it, she described her son as unable to pay attention or listen to directions, and as spending his days walking around the house or locked in his room, and his nights "awake nervous walking from the room to the kitchen" or waking her up "because he is afraid." Record at 379. He also played video games and watched TV. Record at 382. He did not help with household or yard chores, and did not go out alone because "something bad always happens to him." Record at 380, 381. She wrote that Maldonado did not get along with anyone: "He doesn't know how to talk and share with other peoples, always ends up having problems." Record at 383. He easily became aggressive on the street if "he doesn't like the way any person speaks to him." Record at 384.

On March 1, 2021, Ms. Semidey submitted a notarized Affidavit in which she described Maldonado in essentially the same terms she used in her Third-Party Function report, as unable to sleep, concentrate or comply with directions. Record at 461-2. She added that he had threatened to kill himself twice during the COVID quarantine. Record at 462. She also specified that, when angry, Maldonado had broken TVs and walls, and kicked in doors. *Id*.

The ALJ did not mention Ms. Semidey's submissions in his Decision. The Commissioner argues that the ALJ indicated that he reviewed Ms. Semiday's statement, but the only citation she provided is – when quoted in full – the following:

> While reviewed and considered as part of the record, statements on issues reserved to the Commissioner – including but not limited to disability examiner findings, decisions by other governmental agencies – including VA disability determinations/ratings, non medical third-party statements (**Ex. 5E**, **26E**), GAF scores, and decisions by non-governmental entities – are inherently neither valuable nor persuasive to the issue of

whether a claimant is disabled or blind under the Social Security Act. Therefore, no analysis about how such evidence is considered is provided (20 CFR 416.920b(c)).

Record at 22. (The citations to Ms. Semidey's submissions are highlighted in bold).

This is clearly boiler-plate language establishing that the ALJ need not consider statements on issues reserved for the Commissioner, such as whether or not a claimant is disabled. This is true, as far as it goes, but it is not relevant here: Semidey's descriptions of her son's activities and demeanor clearly do not fall into that category of statements. Thus, while this quote may prove that the ALJ knew Ms. Semidey's submissions were in the record, it does not show that he considered them, or even read them.

The Commissioner also argues that, even if the ALJ did not consider Ms. Semidey's statements, Maldonado is not entitled to relief because "the statements made by Plaintiff's mother closely mirror those made by Plaintiff himself." Response at 9. On the contrary, this is exactly why they are important. In *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000), the Court of Appeals for the Third Circuit rejected the Commissioner's argument that an ALJ was entitled to ignore third-party statements because they "added nothing more than stating [the claimant]'s testimony was truthful." The *Burnett* court wrote that this argument lacked merit "because the ALJ made a credibility determination regarding [the claimant] and these witnesses were there to bolster her credibility." *Id*.

Under the present regulations, the ALJ does not make a credibility determination, but does assess the consistency and supportability of the claimant's assertions. 20 C.F.R. §416.920c(c). Just as the statements in *Burnett* were valuable corroboration of the claimant's assertions, Ms. Semidey's statements were valuable in that they were consistent with Maldonado's assertions. For this reason, they should have been considered.

Put another way, the Commissioner argues that the ALJ was entitled to reject Maldonado's assertions as "inconsistent with the treatment records." However, the balance of the evidence as a whole would obviously have been different if the ALJ acknowledged that not only Maldonado, but also his mother with whom he lived, observed him to have "significant difficulty getting along with others, remembering, completing tasks, concentrating, understanding, following instructions, handling stress, and handling changes in routine." Record at 21.

The importance of third-party evidence was emphasized by the Honorable Carol Sandra Moore Wells in *Melton v. Kijakazi*, Civ. A No. 20-5307, 2022 WL 1227972 (E.D. Pa. Apr. 25, 2022), where she cited *Burnett* in remanding a case to the agency because of the ALJ's failure to consider the claimant's mother's submission:

> In Social Security disability cases, the claimant's friends and family members sometimes provide evidence (oral or written) that bears upon the claimant's case. *See Burnett v, Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). When this occurs, the ALJ must explicitly determine the weight she will afford this evidence. *Id*. The reason for this requirement is that the evidence typically is provided to support the claim for benefits. Herein, although the ALJ acknowledged that Plaintiff's mother had submitted a function report and acknowledged that it corroborated Plaintiff's testimony about her limitations, she failed explicitly to accord any weight to the report of Plaintiff's mother. This constitutes legal error. *Burnett*, 220 F.3d at 122. This error was not harmless, because, as the ALJ acknowledged, the function report submitted by Plaintiff's mother corroborates Plaintiff's testimony.

2022 WL at *6. (Citations to the record omitted).

Other judges in this Circuit have reached the same conclusion. *Maellaro v. Colvin*, Civ. A. No. 12-1560, 2014 WL 2770717 at *12 (M.D. Pa. June 18, 2014), *and see Felder v. Saul*, Civ. A. No. 19-151, 2020 WL 108464 at *6 (E.D. Pa. Jan. 9, 2020), quoting *Maellaro*.

7

In *Maellaro*, the District Court for the Middle District of Pennsylvania remanded a case where an ALJ had, among other things, rejected a third-party statement by the claimant's husband on the basis that he had a motivation to support his wife's application. The court wrote:

> The Commissioner encourages claimants to submit third party statements, and recognizes the relevance of statements from individuals who know the claimant. *See* 20 C.F.R. §416.912, 416.913 and 416.929; SSR 96-7p and 96-8p. Third party statements can ... help evaluate the claimant's impairments, symptoms, limitations, functioning, and activities of daily living. ...
>
> [E]very third party statement is submitted by individuals who know the claimant, and are often submitted by those who are closest to the claimant ... If an ALJ could reject third party statements merely because that individual has some motivation to support the claimant's case, it would defeat the entire purpose of submitting third party statements and would run contrary to the Commissioner's express rulings.

2014 WL 2770717 at *12.

Similarly, here, if an ALJ could ignore a third-party statement merely because it was consistent with a claimant's assertions, this would defeat the very purpose of submitting third-party statements and run contrary to Agency authority directing an ALJ to consider such statements. Accordingly, I will order this matter remanded to the Agency for explicit consideration of Ms. Semiday's submissions.

  B. *Maldonado's Recent Therapy Notes*

In evaluating the medical evidence, the ALJ discussed Maldonado's moderate level of psychiatric treatment in the relevant period, the mentions of improved anger and irritability in the notes from his medication provider, and the mixed findings in recent mental status evaluations. Record at 22. He then added: "The claimant failed in his burden to produce therapist records relevant to the period at issue, which might have supported his symptom and functioning allegations." *Id*. Maldonado argues that, in fact, the ALJ failed in his duty to develop the record by obtaining these records.

8

Maldonado was represented by counsel at his hearing before the ALJ, although not the same counsel who represents him here. Record at 30. As the Commissioner points out, counsel did not tell the ALJ that the record lacked Maldonado's recent therapist records or ask for assistance in obtaining them. Certainly, "the burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *and see Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004).

The Commissioner argues on this basis that the ALJ had no duty to seek the missing notes because he was "entitled to assume that [Plaintiff was] making his strongest case for benefits." *Response* at 15, *quoting Glenn v. Secretary, HHS*, 814 F.2d 387, 391 (7th Cir. 1987). This argument, however, simply highlights the unusual facts here which lead the undersigned to conclude that the ALJ violated his duty to develop the record. The ALJ in this case could not "assume" that Maldonado made his strongest case, because he clearly *knew* Maldonado had not done this: he specifically identified the missing therapist notes as evidence which might have benefitted Maldonado.

Maldonado's counsel should have obtained the treatment notes. Nevertheless, an ALJ has a duty to develop the record even where a claimant is represented by counsel, because a hearing before an ALJ is a fact-finding proceeding, and not an adversarial one. *Andino v. Kijakazi*, Civ. A. No. 21-2852, 2022 WL 1135010 at *4 (E.D. Pa. Apr. 18, 2022); *Howard v. Kijakazi*, Civ. A. No. 20-4412, 2021 WL 4893347 at *8 (E.D. Pa. Oct. 20, 2021); *Felder v. Colvin*, Civ. A. No. 16-1231, 2016 WL 8739674 at *3 (E.D. Pa. Nov. 1, 2016), *approved and adopted* 2017 WL 1397312 (E.D. Pa. Apr. 19, 2017); *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 556-7 (E.D. Pa. 1998).

In *Howard*, the Honorable Richard A. Lloret summarized the relevant law:

> The responsibility to develop the record adequately exists whether the plaintiff is represented or not. *Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) (represented plaintiff); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (represented plaintiff). The duty to fully develop the record does not disappear merely because a claimant is represented by counsel. *See Baker v. Bowen*, 886 F.2d 289, 292 n.1 (10th Cir. 1989) ("[T]he ALJ ... has the affirmative duty to fully and fairly develop the record regardless of whether the applicant is represented by an attorney or a paralegal."); *Craig v. Commissioner of Social Security*, 218 F. Supp.3d 249, 262-63 (S.D.N.Y. 2016) ("The ALJ must develop the record even where the claimant has legal counsel."). Where the failure to adequately develop the record prejudices the plaintiff, it is error. *Reefer v. Barnhart*, 326 F.3d 376, 380-1 (3d Cir. 2003) (Plaintiff was prejudiced by the failure of the ALJ to obtain medical records, including a head CT, documenting brain stem surgery and a stroke).

*Howard v. Kijakazi*, *supra*.

Judge Lloret further explained that "the adequacy of the ALJ's development of the record varies case-by-case and depends on the circumstances of the case." *Id.*, *citing Reefer* at 326 F.3d 380. Representation by counsel is a major circumstance to be considered, but "other circumstances bear on the analysis, as well." *Id*.

Here, the fact that Maldonado was represented by counsel was outweighed by the fact that the ALJ noticed that important records were missing. In this regard, the opinion authored by the undersigned in *Andino*, *supra*, is instructive. There, the ALJ failed to obtain mental health treatment notes, but was found not to have violated his duty to develop the record because he had no reason to know that the claimant alleged a "potentially disabling mental impairment." 2022 WL 1135010 at *4.

Here, by contrast, the ALJ not only knew that Maldonado alleged a potentially disabling mental impairment, but also realized by the time he authored his decision that the record lacked potentially crucial documents. The ALJ's independent duty to develop the record did not permit him to say – as in effect, he did – "the record is missing treatment notes which might affect my decision, but, oh well, too bad you didn't present them."

10

Instead, because the ALJ believed that records existed "which might have supported [Maldonado's] symptom and functioning allegations," he had a duty to seek them. I conclude that the ALJ violated his duty in that respect.

It must now be determined whether Maldonado is entitled to relief because of the ALJ's error. Remand is not required where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). The Commissioner points out that Maldonado has not demonstrated that the missing treatment notes would have caused the ALJ to reach another decision, since even now he has not obtained those notes. This is, indeed, a weakness in Maldonado's motion.

Nevertheless, the record contains sufficient evidence of mental impairment to support the ALJ's conclusion that his decision was impacted by his failure to see the notes. First, it should be noted that Maldonado was not able to complete high school in person, apparently because of an inability to concentrate.[1] Record at 35-6. Secondly, Maldonado displayed aggression consistent with his claims around the time he turned eighteen on July 1, 2019. Mental health treatment notes show that on July 23, 2019, he was jailed for three days and charged with intimidation, aggravated assault, and terroristic threats for "punching somebody." Record at 782, 790. Maldonado testified at his hearing that he punched his neighbor in the face because "he got me mad," but he declined to say how. Record at 40. Ultimately, this resulted in six months of house arrest. *Id., and* Record at 849.

---

[1] Some of the records discussed herein date from a few months before the relevant period for this case, which started on October 1, 2019. The Commissioner argues that evidence created prior to the relevant period is irrelevant here, since medical improvement is not considered when a child beneficiary turns eighteen; rather, the concept of redetermination is to treat the transition to adult SSI as a new application. 20 C.F.R. §416.987(b). However, even in an adult SSI case, medical evidence from an earlier period can be relevant to disability during the relevant period. *See Murphy v. Commissioner of Soc. Sec.*, Civ. A. No. 19-6425, 2020 WL 1486041 at *9, *citing Wetzel v. Colvin*, 2015 WL 4488347 at *11 (M.D. Pa. Jul. 23, 2015); *Davies v. Colvin*, 2015 WL 5829760 at *11 (M.D. Pa. Sep. 30, 2015); and *Brown v. Comm'r of Soc. Sec.* 2015 WL 5439035 at *4 (W.D. Pa. Sep. 15, 2015).

Another note from Maldonado's psychiatric medicine provider relates that, one month earlier, on June 13, 2019, "[S]omebody – a group of 20 – jumped Jaime. One of his best friends was killed during the fight. … He did not witness the stabbing but saw him on the ground." Record at 798. The note continues: "Mother noted that he was so out of control after it happened." *Id*.

Further, a May 26, 2020, treatment note states: "[Maldonado] reported that he lost his job a week or two ago. He got fired. He said that he got fired for talking back to the manager. He said that he was upset that his manager shoved him and he did not like the way he was speaking to him." Record at 861. At his hearing, Maldonado testified that this was a job at a Burger King which lasted "like two weeks." Record at 41. He said of the manager: "I didn't get along with him at all. As soon as I started that job, I didn't even like him … he's just weird, I don't know." *Id*.

Further, even the most recent mental health treatment notes in the record are by no means uniformly positive. The reports of improved symptoms upon which the ALJ relied alternate with notes reflecting behaviors which tend to support Maldonado's claim that he displays aggression and hyperactivity. On January 21, 2020, Maldonado reported disordered sleeping. Record at 894. He slept from three to six a.m., and then from one to five in the afternoon. *Id*. His mother remarked that he had "not been doing well." *Id*. Again, on February 11, 2020, Maldonado stated that he was not sleeping "unless it is daytime", from five a.m. to one in the afternoon. Record at 884. His mother said that he was talking a lot about the friend that was stabbed. *Id*. A March 17, 2020, note reports that Maldonado and his mother agreed that he was "really struggling," with insomnia, nightmares, and inability to focus. Record at 876.

In a note dated July 28, 2020, Maldonado is quoted as saying that he was doing "okay." Record at 851. However, he still stayed up at night playing video games, sleeping from five a.m. until noon. *Id*. He had been "really irritated." *Id*. His sentencing date for the assault conviction was approaching: "Mother noted that he was as the lawyer's office he got very upset and was punching things." *Id*.

A note from August 15, 2020, states that Maldonado felt "the medications are working well," but also includes this: "Discussed the options if he has further issues with suicidal thoughts including calling crisis or going to the hospital or a crisis eval." Record at 842. By September 1, 2020, Jaime had started on house arrest. He reported that his sleep was better and that he thought his medications were working, but also stated he had a nightmare in which he got stabbed, and said: "I have been more aggressive lately – yelling in people's faces – I broke stuff." Record at 843.

A note dated September 15, 2020, provides another example of how positive comments mixed with descriptions of troublesome behaviors in Maldonado's mental health treatment notes:

> Jaime said that he is doing fairly well. He reported that his nightmares have gotten better. … Jaime noted that he being [*sic*] he has episodes of depression. Mother noted that he had called his sister and said he wanted to kill himself. Mother noted that he has not talked to her about it. He was upset about being stuck in the house. Mother noted that "he is doing much better." Mother noted that he started sleeping in her room on the couch. Mother not sure if he was lonely or feeling scared. Mother noted that she feels that the meds are helping. Mother has to physically hand him the medicine.

Record at 839.

A November 3, 2020, note reads: "Mother noted that 'everything is out of control.' He is taking his medication and 'it is not helping.' She noted that 'Everything changed for worse.' Mother noted he 'seems more jumpy.' Mother noted that he is only sleepy from 2-3 a.m. till 7. am." Record at 826. Maldonado agreed that he was feeling worse since a medicine change. *Id*.

13

Thus, it is not clear whether the therapy notes which are absent from the record contain anything which would cause the ALJ to issue a different decision. Nevertheless, on this record, it cannot be ruled out. Again, I emphasize that a Social Security disability proceeding is not adversarial in nature. *See Andino*, *supra,* and *Felder*, *supra*. The goal is to determine whether a claimant is disabled, and not to test the acuity of his representation. Accordingly, I will order this matter remanded to the Agency to permit the ALJ to seek Maldonado's missing "therapist records relevant to the period at issue."

      C.    *The State Agency Mental Health Experts*

Maldonado argues that the ALJ erred in writing that the opinions of John Gavazzi, Ph.D., the state agency mental health expert who issued a report in his initial redetermination of benefits, and Thomas Fink, Ph.D., who issued a report upon reconsideration, were "generally consistent with the record as a whole." Record at 22-23.

The only argument Maldonado makes in this regard, however, is that the ALJ's statement was impermissibly conclusory. Maldonado is correct in asserting that an ALJ's decision must be sufficiently detailed to permit judicial review. *Burnett*, *supra*, at 220 F.3d at 119. However, no authority compels the ALJ to include his entire analysis of the record in a single sentence, or paragraph. The language cited by Maldonado was preceded by a multi-page analysis of the record. Record at 18-22. As discussed above, this analysis suffered from certain deficits. However, this does not mean that the ALJ erred in merely using the summary language to which Maldonado points.

D. *Treatment Notes from Before the Relevant Period*

Maldonado argues that "because the ALJ did not obtain the records which Social Security almost certainly had, from the prior award of childhood disability, the ALJ ended up speculating on some of the existence and non-existence of certain diagnoses and their severity." Request for Review at 11.

As discussed above, records created prior to the relevant period for an application for benefits can be considered where they are relevant to disability during the relevant period. *See Murphy v. Commissioner of Soc. Sec.*, Civ. A. No. 19-6425, 2020 WL 1486041 at *9, *citing Wetzel v. Colvin*, 2015 WL 4488347 at *11 (M.D. Pa. Jul. 23, 2015); *Davies v. Colvin*, 2015 WL 5829760 at *11 (M.D. Pa. Sep. 30, 2015); and *Brown v. Comm'r of Soc. Sec.* 2015 WL 5439035 at *4 (W.D. Pa. Sep. 15, 2015). The record, as it now stands, includes mental health treatment records from as far back as 2014. Record at 730. Some of these records are quoted above.

However, Maldonado's prior award of benefits occurred when he was eight or nine years old. Records from that period could shed no real light on his diagnoses at the age of eighteen, much less on his functional capacity, which will ultimately determine whether he is entitled to benefits. In the absence of any more specific argument as to what records would be relevant, and why, Maldonado has not shown that he is entitled to relief on this claim.

V.	*Conclusion*

In accordance with the above discussion, I conclude that this matter should be remanded to the Social Security Agency for the ALJ to (a) seek Maldonado's therapy notes from the relevant period, and (b) consider the third-party submissions.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE